UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE FURMAN

14 CV 2831

AIDAN DOYLE, and MICHAEL SMITH

Plaintiffs,

vs.

THE CITY OF NEW YORK,

Defendant

CLASS ACTION COMPLAINT FOR
DAMAGES, RESTITUTION AND
INJUNCTIVE RELIEF

JURY TRIAL DEMAND

RECEIVED
APR 21 2014
U.S.D.C. S.D. N.Y.
CASHIERS

Plaintiffs, individually and on behalf of all others similarly situated, by their attorney, Stoll, Glickman & Bellina LLP, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

## INTRODUCTION AND FACTUAL ALLEGATIONS

1.      This is a collective and class action brought under the United States Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") against the City of New York ("the City") for its failure to pay minimum wage to people working for the City as a condition of an adjournment in contemplation of dismissal ("ACD"), which effects a dismissal of pending minor charges against the plaintiffs.

2.      Virtually every day across the City, dozens, perhaps hundreds of citizens ("the laborers") work cleaning the City's parks and streets, underpasses and overpasses, sanitation facilities and correctional facilities, for absolutely no pay.

3.      These laborers work under the direct supervision of New York City agencies, including the New York City Sanitation Department, the New York City Department of Parks

and Recreation, the New York City Department of Correction, and the New York City Department of Transportation ("the agencies").

4.      The laborers often work right alongside paid, even unionized employees, and under the close and constant supervision of paid employees of the agencies. The City saves at the least many thousands of dollars a year in labor costs utilizing their free labor.

5.      The laborers are eligible for Workers' Compensation in the event of an injury on the job, pursuant to New York Workers' Compensation Law § 3 (1), Group 19.[1]

6.      The agencies have the right to interview the potential laborers, and to reject those they find unsuitable for their placement needs.

7.      The agencies can and do occasionally eject the laborers from the job site for failure to perform their duties or for inappropriate job site conduct.

8.      The agencies maintain accurate and complete attendance records related to the laborers' work, in which the Agencies refer to the laborers as "employees".

9.      The laborers are constantly supervised by the agencies. The laborers do not work freely or without direct or implied pressure or coercion from the City. Rather, a failure to complete the work subjects the laborers to significant negative consequences, potentially including prosecution, mandated court appearances, fines, and incarceration. The laborers do not perform their work for civic, humanitarian, or charitable reasons.

10.     No conviction of any offense requires the laborers referenced in this complaint to perform their work for the City. Rather, they perform the services as a condition of an ACD, pursuant to New York Criminal Procedure Law § 170.55. ACDs are often offered to individuals charged with minor offenses. They are at times granted to individuals who are actually innocent

---

[1] Although the Kings County District Attorney's Office has at least on occasion required laborers to sign a "waiver of liability" which purports to waive the laborer's right to the workers' compensation benefits in the event of an injury sustained in the course of their work, the outrageous waiver is surely ineffectual and unlawful for myriad reasons, not the least of which that it has been routinely obtained in violation of the accused's right to counsel.

of the offenses charged, or to individuals charged with offenses that the prosecution is finding hard to prove under the circumstances of the case, or to individuals charged with offenses likely to be dismissed due to search and seizure issues.  They are at times offered to individuals when prosecutors or judges do not think the minor charges merit further prosecution.  In accepting an ACD, individuals do not plead guilty to anything, and the charges are eventually dismissed and sealed- the same end result as if the individual had been tried and acquitted.

11.     The defining statute, New York State Criminal Procedure Law § 170.55 allows a court to require the individual to "perform services for a public or not-for-profit corporation" as a condition of an ACD.  But nothing in the statute precludes compensation for such services, nor does the statute exempt the public or nonprofit corporations that employ such laborers from the minimal protections of federal and New York labor laws.

12.     The laborers are compensated for their labors with a report from the agency that employs them, affirming that they have completed their assigned day(s) of work.  This is a substantial benefit to the laborers, who are thus able to eliminate the risk of a trial, to escape the time and expense of protracted litigation, to end the unpleasant experience of being a criminal defendant, and to lend certainty and finality to the charges against them.  The time and effort a laborer would spend taking a case to trial is almost always more than the amount of time they would spend laboring as a condition of an ACD that might be offered instead of trial.

12.     Individuals who labor for the City as a condition of an ACD remain clothed with a presumption of innocence, and are in no need of punishment, deterrence, or rehabilitation.

13.     The laborers remain part of the national economy.  Many are otherwise employed, and the City allows the individuals to perform their work for the City on weekends or other times that do not interfere with their other work.  The laborers' work competes in the marketplace with other laborers and employers, and the City avoids hiring and paying additional employees by

3

utilizing their free labor. For example, according to William Castro, the Manhattan Borough Commissioner of the New York City Department of Parks and Recreation, to address chronic summertime park litter the City supplements its summer maintenance crews with the laborers, as it is "the perfect job for them".[2]

14.     The laborers receive no training or significant instruction for the tasks they perform for the City, and the jobs they perform immediately advantage the City. The mundane tasks performed by the laborers are dissimilar from any that would be performed in an educational environment. For example, the work might include sweeping garage floors, mopping and sweeping hallways, and scrubbing toilets, as well as "the locker room detail", for the Department of Sanitation.[3]

15.     The laborers displace regular paid employees who would otherwise be hired to perform such tasks. Indeed, while the Penal Law provision providing for such services by individuals who have been convicted of offenses requires that the services performed not displace any employed workers, no such requirement applies to those laboring as a condition of an ACD.

16.     The City's use of this "free" labor source is exploitative, puts downward pressure on wages across the City, impacts labor unions' bargaining abilities, and is unlawful.

## NATURE OF ACTION

17.     This is a collective and class action brought by individual and representative plaintiffs Aidan Doyle ("Doyle"), and Michael Smith ("Smith"), and all putative plaintiffs (collectively "plaintiffs"), on their own behalf and on behalf of the proposed class identified below. Plaintiffs are individuals who, pursuant to New York Criminal Procedure Law § 170.55,

---

[2] Lisa W. Foderaro, *If the Parks are Strewn With Garbage, it Must Be a Monday Morning*, N.Y. Times Sept. 8, 2013.
[3] DeCrow, Jason, *Sanitation Department Releases Supermodel From Community Service*, USA Today March 25, 2007.

"perform services" for the City of New York (colloquially referred to as "community service"). Plaintiffs were not paid for the work they performed, but were "employees" entitled to pay, pursuant to the FLSA and NYLL.

18.    These employees are similarly situated under Federal Rule of Civil Procedure 23 and the FLSA, 29 U.S.C. § 216(b), having each been employed, but not paid, by the City of New York, for services performed pursuant to an ACD.

19.    During the "Collective Class Period" (within three years prior to this action's filing date through the date of the final disposition of this action), defendant unlawfully failed to pay lawful minimum wage. Plaintiffs seek relief for the Collective Class under the FLSA, to remedy defendant's failure to pay all wages due, in addition to injunctive relief and liquidated damages.

## PARTIES

20.    Individual and class representative plaintiffs Doyle and Smith are individuals who were arrested and charged with minor offenses from 2012-2013.

21.    Doyle is a Legal Resident of the United States, and resides in New York, New York.

22.    Smith is a citizen of the United States and resides in Brooklyn, NY.

23.    The City of New York is a municipal corporation organized under the laws of the State of New York.

24.    Doyle was arrested on March 21, 2012, and charged with entering the New York City Transit System without paying. On April 24, 2012, Doyle was granted an ACD with the requirement he perform three days of services. He performed at least one of those days sometime in the year following, working for the New York City Department of Parks and Recreation, picking up trash in Wingate Park, in Brooklyn. He was not paid for the work.

5

25.    Because Doyle did not perform all three days of services, he was "declared delinquent", arrested on a warrant, and brought in handcuffs back to court. The underlying charges were ultimately dismissed.

26.    Smith was stopped by police on July 3, 2013, who charged him with speeding ten miles per hour over the speed limit, and with possessing a small "gravity knife" in his glove compartment. Smith was granted an ACD with the requirement he perform one day of services. On approximately February 5, 2014, Smith worked for the New York City Department of Transportation, cleaning the Cross Bay Bridge over Jamaica Bay. He was not paid for the work. In exchange for his work, the Department of Transportation advised the Kings County District Attorney's Office that Smith had completed his work, and the underlying charges were ultimately dismissed.

## JURISDICTION AND VENUE

27.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

28.    In addition, the Court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 206 et seq.

29.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

30.    Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because New York City agencies that are benefitting from the labor in question are headquartered within the Southern District of New York, and a large percentage of the labor in issue takes place in Manhattan and the Bronx, within the Southern District of New York.

31.    Defendant is subject to personal jurisdiction in New York.

## COLLECTIVE AND CLASS ALLEGATIONS

32. Plaintiffs bring this action as a collective and class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and the FLSA.

33. The proposed class is defined as:

> All people who performed services for any agency of New York City as a condition of an adjournment in contemplation of dismissal, and who were not paid for such services, for the six years prior to the filing of this action through to its final disposition.

34. Defendants' conduct, as set forth in this complaint, was willful and in bad faith, and has caused significant damages to plaintiffs and the collective class.

35. Defendants are liable under the FLSA for failing to properly compensate plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of defendant who were subject to the aforementioned policy in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to defendant and are readily identifiable through defendant's records.

36. _Numerosity:_  The proposed class is so numerous that joinder of all members is impracticable. Plaintiffs believe and allege that during the class period, defendant employed over 40 people who satisfy the definition of the Proposed Class.

37. _Typicality:_  Plaintiffs' claims are typical of the members of the proposed class. Plaintiffs believe that the putative plaintiffs were subject to the aforementioned unlawful policies during the Class Period. All plaintiffs were subject to defendant's policy and practice of

unlawfully failing to pay $7.25 per hour to individuals performing services as a condition of an ACD.

38.   <u>Superiority</u>:   A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39.   <u>Adequacy:</u>   Plaintiffs will fairly and adequately protect the interests of the proposed class, and have retained counsel experienced in complex NYLL and FLSA class action litigation.

40.   <u>Commonality</u>: Common questions of law and fact exist as to all members of the proposed class and predominate over any questions affecting individual members of the proposed class, including but not limited to whether individuals performing menial manual labor for City agencies as a condition of an ACD are employees within the meaning of New York and federal law.

41.   The case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the class would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for defendant. Further, adjudication of each individual member's claim as a separate action would be dispositive of the interest of other individuals not party to this action, impeding their ability to protect their interests.

42.   Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the proposed class predominate over any questions affecting only individual members of the proposed class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.   Defendant's common and uniform policies and practices denied the proposed class the wages to which they are entitled.   The damages suffered by the individual proposed class members are small

compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about defendants' practices.

43.     Plaintiffs intend to send notice to all members of the proposed class to the extent required by Rule 23. The names and addresses of the proposed class are available from defendants.

**FIRST CAUSE OF ACTION**
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

44.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

45.     Plaintiffs consent in writing to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiffs' written consent forms are here attached. Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

46.     At all relevant times, Defendant has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 20 U.S.C. § 203. At all relevant times, Defendant has employed and continue to employ employees, including the collective class members. At all relevant times, upon information and belief, defendant had gross operating revenues in excess of $500,000.00.

47.     During their employment with Defendant, within the applicable statute of limitations, plaintiffs and the other Collective Class members were employed by Defendant.

48.     Defendant paid plaintiffs less than $7.25 per hour for their work.

49.     The foregoing conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a), and such other legal and equitable relief as the Court deems just and proper.

50.     Plaintiffs, on behalf of themselves and the collective class, seek recovery of their attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
### (New York Labor Law § 652 )

51.     Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

52.     At all relevant times, plaintiffs were employees and Defendant was an employer within the meaning of the New York Labor Law.

53.     Defendant has failed to pay plaintiffs and the Rule 23 class $7.25 per hour.

54.     Defendant's failure to pay $7.25 per hour to plaintiffs was willful.

55.     Due to Defendant's violations of the NYLL, plaintiffs and the Rule 23 class members are entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and all members of the proposed class, pray for relief as follows:

A.     That the Court determine that this action may proceed as a class action under Rule 23(b)(1) and (3) of the Federal Rules of Civil Procedure;

B.     That Defendant is found to have violated the provisions of the New York Labor Law as to plaintiffs and the class;

C.     That Defendant is found to have violated the Federal Fair Labor Standards Act as to plaintiffs and the collective class;

D.     That Defendant's violations as described above are found to be willful;

E.      An award to plaintiffs and the class for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

F.      That Defendant further be enjoined to cease unlawful activities in violation of the FLSA and NYLL;

G.      An award of reasonable attorneys' fees and costs pursuant to the NYLL and 29 USC § 216 and/or other applicable law; and

H.      For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury as to all issues so triable.

DATED:  April 21, 2014

Stoll, Glickman & Bellina, LLP

Andrew B. Stoll (AS8808)
Stoll, Glickman & Bellina, LLP
475 Atlantic Avenue
Brooklyn, NY 11217
astoll@stollglickman.com

*Attorneys for plaintiffs and the proposed class*