UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AIDAN DOYLE, MICHAEL SMITH, and WILLIAM PAYBARAH<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF NEW YORK,<br><br>Defendant | DOCKET # 14-CV-2831 (JMF)(FM)<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES, RESTITUTION AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMAND** |

Plaintiffs, individually and on behalf of all others similarly situated, by their attorney, Stoll, Glickman & Bellina LLP, allege, upon personal knowledge and upon information and belief as to other matters, as follows:

### INTRODUCTION AND FACTUAL ALLEGATIONS

1. This is a collective action brought under the United States Fair Labor Standards Act ("FLSA") against the City of New York ("the City") for its failure to pay minimum wage to people working for the City as a condition of an adjournment in contemplation of dismissal ("ACD"), which effects a dismissal of charges against individuals accused of misdemeanors and violations.

2. Virtually every day across the City, dozens, perhaps hundreds of citizens ("the laborers") are employed cleaning the City's parks and streets, underpasses and overpasses, sanitation facilities and correctional facilities, for absolutely no pay.

3. These laborers work under the direct supervision of New York City agencies, including the New York City Sanitation Department, the New York City Department of Parks and Recreation, the New York City Department of Correction, the New York City Police

Department, and the New York City Department of Transportation ("the agencies"), and the agencies entirely control the manner and means by which the laborers complete their tasks.

4. The laborers often work right alongside paid, even unionized employees, and under the close and constant supervision of paid employees of the agencies. The City saves at the least many thousands of dollars a year in labor costs utilizing their free labor.

5. The laborers are eligible for Workers' Compensation in the event of an injury on the job, pursuant to New York Workers' Compensation Law § 3 (1), Group 19.[1]

6. The agencies have the right to interview the potential laborers, and to reject those they find unsuitable for their placement needs.

7. The agencies can and do occasionally eject the laborers from the job site for failure to perform their duties or for inappropriate job site conduct.

8. The agencies maintain accurate and complete attendance records related to the laborers' work, in which the Agencies refer to the laborers as "employees".

9. The laborers are constantly supervised by the agencies. The laborers do not work freely or without direct or implied pressure or coercion from the City. Rather, a failure to complete the work subjects the laborers to significant negative consequences, potentially including prosecution, mandated court appearances, fines, and incarceration. The laborers do not perform their work for civic, humanitarian, or charitable reasons.

10. No conviction of any offense requires the laborers referenced in this complaint to perform their work for the City. Rather, they perform the services as a condition of an ACD, pursuant to New York Criminal Procedure Law § 170.55. ACDs are often offered to individuals charged with minor offenses. They are at times granted to individuals who are actually innocent

---

[1] Although the Kings County District Attorney's Office has at least on occasion required laborers to sign a "waiver of liability" which purports to waive the laborer's right to the workers' compensation benefits in the event of an injury sustained in the course of their work, the outrageous waiver is surely ineffectual and unlawful for myriad reasons, not the least of which that it has been routinely obtained in violation of the accused's right to counsel.

of the offenses charged, or to individuals charged with offenses that the prosecution is finding hard to prove under the circumstances of the case, or to individuals charged with offenses likely to be dismissed due to search and seizure issues. They are at times offered to individuals when prosecutors or judges do not think the minor charges merit further prosecution. In accepting an ACD, individuals do not plead guilty to anything, and the charges are eventually dismissed and sealed- the same end result as if the individual had been tried and acquitted.

11. The defining statute, New York State Criminal Procedure Law § 170.55 allows a court to require the individual to "perform services for a public or not-for-profit corporation" as a condition of an ACD. But nothing in the statute precludes compensation for such services, nor does the statute exempt the public or nonprofit corporations that employ such laborers from the minimal protections of federal labor laws.

12. The laborers are compensated for their labors with a report from the agency that employs them, affirming that they have completed their assigned day(s) of work. This is a substantial benefit to the laborers, who are thus able to eliminate the risk of a trial, to escape the time and expense of protracted litigation, to end the unpleasant experience of being a criminal defendant, and to lend certainty and finality to the charges against them. The time and effort a laborer would spend taking a case to trial is almost always more than the amount of time they would spend laboring as a condition of an ACD that might be offered instead of trial.

12. Individuals who labor for the City as a condition of an ACD remain clothed with a presumption of innocence, and are in no need of punishment, deterrence, or rehabilitation.

13. The laborers remain part of the national economy. Many are otherwise employed, and the City allows the individuals to perform their work for the City on weekends or other times that do not interfere with their other work. The laborers' work competes in the marketplace with other laborers and employers, and the City avoids hiring and paying additional employees by

utilizing their free labor. For example, according to William Castro, the Manhattan Borough Commissioner of the New York City Department of Parks and Recreation, to address chronic summertime park litter the City supplements its summer maintenance crews with the laborers, as it is "the perfect job for them".[2]

14. The laborers receive no on the job training, vocational education, or skills development training for the tasks they perform for the City, and the jobs they perform immediately advantage the City. The mundane tasks performed by the laborers are dissimilar from any that would be performed in an educational environment. For example, the work might include sweeping garage floors, mopping and sweeping hallways, and scrubbing toilets, as well as "the locker room detail", for the Department of Sanitation.[3]

15. The laborers displace regular paid employees who would otherwise be hired to perform such tasks. Indeed, while the Penal Law provision providing for such services by individuals who have been convicted of offenses requires that the services performed not displace any employed workers, no such requirement applies to those laboring as a condition of an ACD.

16. The City's use of this "free" labor source is exploitative, puts downward pressure on wages across the City, impacts labor unions' bargaining abilities, and is unlawful.

## NATURE OF ACTION

17. This is a collective action brought by individual and representative plaintiffs Aidan Doyle ("Doyle"), Michael Smith ("Smith"), William Paybarah ("Paybarah") and all putative plaintiffs (collectively "plaintiffs"), on their own behalf and on behalf of the proposed class identified below. Plaintiffs are individuals who, pursuant to New York Criminal Procedure

---

[2] Lisa W. Foderaro, *If the Parks are Strewn With Garbage, it Must Be a Monday Morning*, N.Y. Times Sept. 8, 2013.
[3] DeCrow, Jason, *Sanitation Department Releases Supermodel From Community Service*, USA Today March 25, 2007.

Law § 170.55, "perform services" for the City of New York (colloquially referred to as "community service"). Plaintiffs were not paid for the work they performed, but were "employees" entitled to pay, pursuant to the FLSA.

18. These employees are similarly situated under the FLSA, 29 U.S.C. § 216(b), having each been employed, but not paid, by the City of New York, for services performed pursuant to an ACD.

19. During the "Collective Class Period" (within three years prior to this action's filing date through the date of the final disposition of this action), defendant unlawfully failed to pay lawful minimum wage. Plaintiffs seek relief for the Collective Class under the FLSA, to remedy defendant's failure to pay all wages due, in addition to injunctive relief and liquidated damages.

## PARTIES

20. Individual and class representative plaintiffs Doyle and Smith are individuals who were arrested and charged with minor offenses from 2012-2013.

21. Doyle is a Legal Resident of the United States, and resides in New York, New York.

22. Smith is a citizen of the United States and resides in Brooklyn, New York.

23. Paybarah is a citizen of the United States and resides in Bayside, New York.

24. The City of New York is a municipal corporation organized under the laws of the State of New York.

25. Doyle was arrested on March 21, 2012, and charged with entering the New York City Transit System without paying.

26. Doyle was offered a plea of guilty to disorderly conduct, with a condition he perform services, which he rejected, because he was not guilty of disorderly conduct.

27. On April 24, 2012, Doyle was offered an ACD with the requirement he perform three days of services, which he accepted.

28. Doyle performed at least one of the above referenced days of services sometime in the year following, working for the New York City Department of Parks and Recreation, picking up trash in Wingate Park, in Brooklyn. He was not paid for the work.

29. Because Doyle did not perform all three days of services, he was "declared delinquent", arrested on a warrant, and brought in handcuffs back to court. The underlying charges were ultimately dismissed.

30. Smith was stopped by police on July 3, 2013, who charged him with speeding ten miles per hour over the speed limit, and with possessing a small "gravity knife" in his glove compartment, which he denies.

31. Smith refused several offers to plead guilty to a violation, which he refused, because he was not guilty of any offense.

32. Smith was ultimately offered an ACD with the condition he perform one day of services, which he accepted, since it did not entail a conviction for any offense.

33. On approximately February 5, 2014, the New York City Department of Transportation suffered or permitted Smith to work for it for a full day and he worked cleaning the Cross Bay Bridge over Jamaica Bay.

34. The Department of Transportation controlled the manner and means by which Smith performed his tasks, driving him to the location where he was to work, providing him with equipment to perform his tasks, checking him in and out, and directing when he was allowed to take breaks.

35. Smith was not paid for his work.

36. In exchange for Smith's work, the Department of Transportation advised the Kings County District Attorney's Office that Smith had completed his work, and the underlying charges were ultimately dismissed.

37. Paybarah was stopped by Police Officer Christian Rich on March 19, 2014 for riding his bicycle through a red light.

38. Because Paybarah video recorded Officer's Rich's approach to him, Officer Rich charged Paybarah with disorderly conduct and resisting arrest, both of which Paybarah denies.

39. Paybarah was offered a deal to plead guilty to disorderly conduct and perform services, which he rejected, because he was not guilty of disorderly conduct. He was subsequently offered an ACD with a condition he perform one day of services, which he accepted, since it did not entail a conviction.

40. On May 26, 2014, the New York City Department of Parks and Recreation suffered or permitted Paybarah worked to work for it in Tompkins Square Park in Manhattan, cleaning around the basketball and handball courts, from approximately 9:00 AM to 4:00 PM.

41. The New York City Department of Parks and Recreation controlled the manner and means by which Paybarah performed his tasks, directing him to the specific locations to be cleaned, providing him with equipment with which to perform his tasks, regulating his breaks and work times, and controlling the length of his work.

42. Paybarah was not paid for his work.

**JURISDICTION AND VENUE**

43. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337.

44. In addition, the Court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 206 et seq.

45. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

46. Venue is proper in the United States District Court, Southern District of New York pursuant to 28 U.S.C. § 1391, because New York City agencies that are benefitting from the labor in question are headquartered within the Southern District of New York, and a large percentage of the labor in issue, including Paybarah's work, takes place in Manhattan and the Bronx, within the Southern District of New York.

47. Defendant is subject to personal jurisdiction in New York.

## COLLECTIVE ALLEGATIONS

48. Plaintiffs bring this action as a collective action, pursuant to the FLSA.

49. The proposed collective class is defined as:

> All people who performed services for any agency of New York City as a condition of an adjournment in contemplation of dismissal, and who were not paid at least $7.25 per hour worked, for the three years prior to the filing of this action through to its final disposition.

50. Defendants' conduct, as set forth in this complaint, was willful and in bad faith, and has caused significant damages to plaintiffs and the collective class.

51. Defendants are liable under the FLSA for failing to properly compensate plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of defendant who were subject to the aforementioned policy in violation of the FLSA who would benefit from the issuance of a Court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. Those similarly situated employees are known to defendant and are readily identifiable through defendant's records. Plaintiffs and the similarly situated individuals were victims of a common policy or plan that violated the law.

## FIRST CAUSE OF ACTION
**(Unlawful Failure to Pay Overtime Compensation under the Fair Labor Standards Act)**

38. Plaintiffs allege and incorporate by reference the allegations in the preceding paragraphs.

39. Plaintiffs have consented in a writing, filed with this Court, to be a part of this action, pursuant to 20 U.S.C. § 216(b). Plaintiffs anticipate that as this case proceeds, other individuals will sign consent forms and join as plaintiffs.

40. At all relevant times, Defendant has been an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203. At all relevant times, Defendant has employed and continues to employ employees, including the collective class members. At all relevant times, upon information and belief, defendant had gross operating revenues in excess of $500,000.00.

41. During their employment with Defendant, within the applicable statute of limitations, plaintiffs and the other Collective Class members were employed by Defendant.

42. Defendant paid plaintiffs less than $7.25 per hour for their work.

43. The foregoing conduct constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C §§ 216(b) and 255(a).

44. Plaintiffs, on behalf of themselves and the collective class, seek recovery of their attorneys' fees and costs to be paid by Defendant, as provided by the FLSA, 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs, on behalf of themselves and all members of the proposed class, pray for relief as follows:

A. That the Court determine that this action may proceed as a collective action under the FLSA;

B. That Defendant is found to have violated the Federal Fair Labor Standards Act as to plaintiffs and the collective class;

C. That Defendant's violations as described above are found to be willful;

D. An award to plaintiffs and the collective class for the amount of unpaid wages owed, including interest thereon, and penalties, including liquidated damages, subject to proof at trial;

E. That Defendant further be enjoined to cease unlawful activities in violation of the FLSA;

F. An award of reasonable attorneys' fees and costs pursuant to 29 USC § 216 and/or other applicable law; and

G. For such other and further relief, in law or equity, as this Court may deem appropriate and just.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury as to all issues so triable.

DATED:  May 28, 2014

Stoll, Glickman & Bellina, LLP

_____
Andrew B. Stoll (AS8808)
Stoll, Glickman & Bellina, LLP
475 Atlantic Avenue
Brooklyn, NY 11217
astoll@stollglickman.com
*Attorneys for plaintiffs and the proposed collective class*