14 Civ. 2831 (JMF)(FM)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AIDAN DOYLE, MICHAEL SMITH, and WILLIAM
PAYBARAH

Plaintiffs,

-against-

CITY OF NEW YORK,

Defendant.

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

**ZACHARY W. CARTER**
*Corporation Counsel of the City of New York*
*Attorney for Defendant*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Kathryn Martin*
*Tel:  (212) 356-2444*
*Matter No. 2014-015559*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS .................................................................................... 1

    New York Criminal Procedure Law § 170.55 .............................................. 1

    Individual Plaintiffs .................................................................................... 2

ARGUMENT

    POINT I

        THE COMPLAINT FAILS TO STATE A CLAIM
        UNDER THE FLSA ................................................................. 4

        A.    Plaintiff Are Not Employees Under The
            FLSA ........................................................................... 4

            1.    Plaintiffs Were Not Promised And
                Did Not Expect Compensation ...........................................6

            2.    Plaintiffs Voluntarily Performed
                Community Service For Their Own
                Personal Purpose ...................................................7

            3.    Plaintiffs Primarily Benefited From
                Performing Community Service ...........................................8

            4.    Plaintiffs Voluntarily Chose To
                Perform Community Service ...........................................10

CONCLUSION .................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Pages**

*Barfield v. N.Y. City Health & Hosps. Corp.*,
   537 F.3d 132 (2d Cir. 2008) ................................................................. 6

*Benshoff v. City of Va. Beach*,
   180 F.3d 136 (4th Cir. 1999) ........................................................ 4, 8, 9

*Blair v. Wills*,
   420 F.3d 823 (8th Cir. 2005) ................................................................. 9

*Brown v. New York City Dept. of Educ.*,
   No. 13-cv-0139, 2014 U.S. App. LEXIS 11412 (2d Cir. June 18, 2014).......................... 4, 5, 8

*Isaacson v. Penn Cmty. Servs., Inc.*,
   450 F.2d 1306 (4th Cir. 1971) ............................................................... 9

*Marshall v. Regis Educ. Corp.*,
   666 F.2d 1324 (10th Cir. 1981) ............................................................. 9

*Purdham v. Fairfax County Sch. Bd.*,
   637 F.3d 421 (4th Cir. 2011) .............................................................. 4, 5

*Rutherford Food Corp. v. McComb*,
   331 U.S. 722 (1947)....................................................................... 4, 7

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
   642 F.3d 518 (6th Cir. 2011) ............................................................... 8

*Todaro v. Twp. of Union*,
   40 F. Supp. 2d 226 (D.N.J. 1999) ......................................................... 5, 7

*Velez v. Sanchez*,
   693 F.3d 308 (2d Cir. 2012) ............................................................... 8

*Walling v. Portland Terminal Co.*,
   330 U.S. 148 (1947)..................................................................... 4, 5, 6

**Statutes**

29 C.F.R. § 553.101 (a), (c) ................................................................. 5

29 C.F.R. § 553.101 (c)...................................................................... 10

29 C.F.R. § 553.106(d) ....................................................................... 6

**Statutes**                                                                                     **Pages**

29 U.S.C. § 203(e)(1) ............................................................................................... 5

29 C.F.R. § 203(e)(4)(a) .......................................................................................... 5

29 U.S.C. § 203(g) .................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) .......................................................................................... 1

N.Y. Crim. Law Pr. § 170.55 ......................................................................... 1, 7, 10

N.Y. Crim. Law Pr. § 170.55(1) ............................................................................ 1

N.Y. Crim. Law Pr. § 170.55(6) ............................................................................ 1

N.Y. Crim. Law Pr. § 170.55(8) ............................................................................ 1

New York Workers' Compensation Law § 3(1) ..................................................... 3

## PRELIMINARY STATEMENT

Plaintiffs Aidan Doyle, Michael Smith, and William Paybarah bring this collective action under the United States Fair Labor Standards Act ("FLSA") against the City of New York ("the City") because they were not paid minimum wage when they performed community service as part of a resolution of criminal charges against them. Because each Plaintiff consented to performing community service as a condition of the dismissal of criminal charges pending against them, they were not "employees" of the City of New York and are not entitled to wages under the FLSA. Accordingly, the Amended Complaint fails to state a claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## STATEMENT OF FACTS

### New York Criminal Procedure Law § 170.55

Prior to a guilty plea or commencement of a trial, and with the *consent* of both the prosecution and the defendant, a criminal court may order an "adjournment in contemplation of dismissal," or an "ACD," for actions involving minor offenses. *See* N.Y. Crim. Law Pr. § 170.55(1). As a condition of an ACD, the court may "require the defendant to perform services for a public or not-for-profit corporation, association, institution or agency," but this requirement "may only be imposed where the defendant has consented to the amount and conditions of such service." *Id.* § 170.55(6). A criminal defendant who consents to an ACD (an "ACD volunteer"), does not plead guilty to any charges, which will be dismissed and sealed if, after six months, the defendant is not arrested again and he or she complies with the conditions of the ACD; the same end-result as if the individual had been tried and acquitted. *See* N.Y. Crim. Law Pr. § 170.55(8); Amended Compl. ¶ 10. The failure of an ACD volunteer to complete his or her assignment could potentially result in prosecution, court appearances, fines, and incarceration. *Id.* ¶ 9.

**<u>Individual Plaintiffs</u>**

Plaintiff Doyle was arrested on March 21, 2012, and charged with entering the New York City Transit System without paying.  Amended Compl. ¶ 25.  On April 24, 2012, Doyle avoided a trial on the charges by consenting to an ACD with the requirement that he perform three days of community service.  *Id*. ¶ 27.  He performed one day of community service sometime in the following year, working for the New York City Department of Parks and Recreation picking up trash in a Brooklyn park.  *Id*. ¶ 28.  He was not paid for the work.  *Id*.  Because Doyle did not perform all three days of service, he was "declared delinquent," arrested, and brought back to court.  *Id*. ¶ 29.  The underlying charges were ultimately dismissed.  *Id*.

Plaintiff Smith was stopped by police on July 3, 2013, and was charged with speeding ten miles per hour over the speed limit and possessing a "gravity knife" in his glove compartment.  Amended Compl. ¶ 30.  Smith avoided a trial on the charges by consenting to an ACD with the requirement that he perform one day of community service.  *Id*. ¶ 32.  On or about February 5, 2014, Smith performed community service for the New York City Department of Transportation by cleaning the Cross Bay Bridge.  *Id*. ¶ 33.  He was not paid for the work.  *Id*. ¶ 35.  After completing his community service, the underlying charges were dismissed.  *Id*. ¶ 36.

Plaintiff Paybarah was stopped by police on March 19, 2014 for riding his bicycle through a red light.  Amended Compl. ¶ 37.  Paybarah was subsequently charged with disorderly conduct and resisting arrest.  *Id*. ¶ 38.  Paybarah avoided a trial on the charges by consenting to an ACD with the requirement that he perform one day of community service.  *Id*. ¶ 39.  On or about May 26, 2014, Smith performed community service for the New York City Department of Parks and Recreation by cleaning Tompkins Square Park.  *Id*. ¶ 40.  He was not paid for the work.  *Id*. ¶ 42.

Plaintiffs allege that the City saves money as a result of the community service performed by ACD volunteers who work alongside paid and unionized employees and under the close and constant supervision of paid employees of the agencies.   Amended Compl. ¶ 4. Plaintiffs claim that the agencies have the right to interview potential ACD volunteers, to reject those they find unsuitable for their placement needs, and to eject individuals from the job site for failure to perform their duties or for inappropriate job site conduct.  *Id*. ¶¶ 6-7.  Plaintiffs also allege that they are eligible for Workers' Compensation in the event of an injury on the job pursuant to New York Workers' Compensation Law § 3(1), Group 19.  *Id*. ¶ 5.  Additionally, Plaintiffs contend that the agencies maintain attendance records for the ACD volunteers' service and refer to the them as "employees."  *Id*. ¶ 8.  Plaintiffs further allege that ACD volunteers, including themselves, do not perform their assignments for civic, humanitarian or charitable reasons. *Id*. ¶ 9.

ACD volunteers receive a report from the agency for which they volunteered, affirming that they have completed their assigned day(s) of work.   Amended Compl. ¶ 12. According to Plaintiffs, they remain part of the national economy because they are otherwise employed, and are permitted to perform their community service on weekends or other times that do not interfere with their regular work.  *Id*. ¶ 13.  Plaintiffs claim they receive no training or significant instruction for the tasks they perform for the City, and that they displace regular, paid employees who would otherwise be hired to perform such tasks.  *Id*. ¶¶ 14-15.

**ARGUMENT**

**POINT I**

**THE COMPLAINT FAILS TO STATE A CLAIM UNDER THE FLSA**

Plaintiffs cannot maintain a claim under the FLSA because they are not "employees," but rather are "volunteers" who freely consented to perform community service in exchange for receiving an ACD.

**A.     Plaintiff Are Not Employees Under The FLSA**

Congress passed the FLSA in an "effort to eliminate low wages and long hours . . . [and] conditions that were detrimental to the health and well-being of workers." *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947). Application of the FLSA is intended to be broad, but not unlimited. *See Benshoff v. City of Va. Beach*, 180 F.3d 136, 140 (4th Cir. 1999). Individuals seeking compensation pursuant to the FLSA "bear the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act." *Id.*

Under the FLSA, "'employ' [means] to suffer or permit to work." *See* 29 U.S.C. § 203(g). This definition is "not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another," nor should it be interpreted so as to "sweep under the Act each person who, without promise or expectation of compensation, but solely for his personal purpose or pleasure, work[s] in activities carried on by other persons either for their pleasure or profit." *See Purdham v. Fairfax County Sch. Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)); *see also Brown v. New York City Dept. of Educ.*, No. 13-cv-0139, 2014 U.S. App. LEXIS 11412, at *20 (2d Cir. June 18, 2014) (holding

- 4 -

that FLSA regulations express a clear limiting intent, "defined not by the volunteer's exclusivity

of purpose, but, rather, by his free choice in providing services without payment").

While the FLSA broadly defines "employee" as "any individual employed by an

employer," *see* 29 U.S.C. § 203(e)(1), it expressly excludes:

> any individual who volunteers to perform services for a public
> agency which is a State, a political subdivision of a State, or an
> interstate governmental agency, if (i) the individual receives no
> compensation or is paid expenses, reasonable benefits, or a
> nominal fee to perform the services for which the individual
> volunteered and (ii) such services are not the same type of services
> which the individual is employed to perform for such public
> agency."

*Id*. § 203(e)(4)(a).

Whether an individual is a volunteer is a matter of law to be determined by the

Court.  *See Purdham,* 637 F.3d at 428.   The Department of Labor defines "volunteer" in its

regulations as an "individual who performs hours of service for a public agency for civic,

charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for

services rendered" and does so "freely and without pressure or coercion, direct or implied, from

an employer." *See* 29 C.F.R. § 553.101 (a), (c).  Courts have repeatedly cautioned, however, that

this regulatory definition must be applied "in a common-sense manner, which takes into account

the totality of the circumstances surrounding the relationship between the individual providing

services and the entity for which the services are provided." *See Purdham,* 637 F.3d at 428

(citation omitted); *Todaro v. Twp. of Union*, 40 F. Supp. 2d 226, 230 (D.N.J. 1999) (FLSA

definition of "volunteer" should not "offend[] rationality" or yield an "absurd result"); *Brown,*

2014 U.S. App. LEXIS 11412, at \*22 ("[A] person's mixed motives are simply part of the

totality of the circumstances properly considered by a court in making the final legal

determination of whether a person is a public agency volunteer or an employee."); *Barfield v.*

*N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008) (treating "employment" for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances); *see also Walling,* 330 U.S. at 152 (excluding from its definition of "employee" one who, "without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or for profit").

       Based on the totality of the circumstances, Plaintiffs were undoubtedly "volunteers" and not employees covered under the FLSA.

### 1.      Plaintiffs Were Not Promised And Did Not Expect Compensation

       It is undisputed that Plaintiffs were not promised, nor did they expect, monetary compensation for performing community service.  Rather, Plaintiffs allege that they were "compensated" with a report from the agency "affirming that they [had] completed their assigned" service. *See* Amended Compl. ¶ 12.  This type of "compensation," however, does not convert Plaintiffs from volunteers to employees.  At most, the report that Plaintiffs received from the agencies would be considered a "reasonable benefit," which is not equivalent to "compensation" and does not violate either the letter or the spirit of the FLSA.  *See* 29 C.F.R. § 553.106(d) ("Individuals do not lose their volunteer status if they are provided reasonable benefits by a public agency for whom they perform volunteer services."); *Walling*, 330 U.S. at 153 (refusing to transform railroad trainees into employees simply because they received the benefit of being placed into a "labor pool from which the railroad could later draw its employees").[1]

---

[1]     Eligibility for Workers' Compensation, *see* Amended Compl. ¶ 5, is also expressly considered a reasonable benefit.  *See* 29 C.F.R. § 553.106(d).

Further, to the extent Plaintiffs allege that they received a "substantial benefit" from their volunteer services, i.e. they eliminated the risks, time and expense of trial, *see* Amended Compl. ¶ 12, there is no allegation that that benefit was bestowed by the City.  As set forth in N.Y. Crim. Law Pr. § 170.55, it is the criminal court that provides Plaintiffs with the opportunity for an ACD in the first place.  City agencies simply provide the means by which the Plaintiffs may fulfill the community service required by the court.

### 2. Plaintiffs Voluntarily Performed Community Service For Their Own Personal Purpose

Plaintiffs undoubtedly performed community service for their own "personal purpose:" to avoid a trial on the criminal charges brought against them.  That Plaintiffs did not perform the community service for "civic, humanitarian, or charitable reasons," *see* Amended Compl. ¶ 9, does not render them "employees."

The *Todaro* court recognized that the definition of "volunteer" under the FLSA regulations "fails to reflect the fact that a person who volunteers services may be motivated, either in whole or in part," by reasons other than civic, charitable or humanitarian reasons, including gaining employment contacts, experience, or school credit.  40 F. Supp. 2d at 230.  The court went on to explain that, as an example, it would "offend rationality" for a law student who provides services as a judicial intern, who considers herself a volunteer, and who is motivated solely to obtain legal experience or resume fodder, and not for civic, charitable or humanitarian reasons, to be considered an "employee."  *Id.*  The court concluded that Congress and the Department of Labor could not have intended this "obviously absurd result."  *Id.*  Similarly here, it would be absurd for individuals who agreed to voluntarily perform community service for one day in order to avoid a trial on criminal charges to be considered "employees" of the City simply because their motivations were not civic, charitable or humanitarian.  *See Rutherford*, 331 U.S. at

730 (holding that the determination of employment relationship under the FLSA does not depend on isolated factors but upon the circumstances of the whole activity); *see also Brown*, 2014 U.S. App. LEXIS 11412, at *20-21 (acknowledging that the obligation to construe the volunteer exception narrowly "does not contemplate the imposition of judicial limits not intended by either Congress or the implementing agency, particularly where those limits would further a result— discouraging or impeding volunteer services to public agencies—that Congress and the agency expressly disavow").

Further, Plaintiffs' allegations that a City agency interviews ACD volunteers (and can reject "unsuitable" volunteers) and then subsequently maintains attendance records and supervises them – including having the authority to "eject[] [them] from the job site for failure to perform their duties or for inappropriate conduct," – does not render Plaintiffs City employees. *See* Amended Compl. ¶¶ 4, 6-8.  Indeed, this type of basic management does not convert volunteers to employees.  *See Benshoff*, 180 F.3d at 142-45 (city's involvement in the volunteer rescue squads, including maintaining a centralized emergency communications center, providing centralized scheduling for certain shifts, overseeing certification of volunteers, revoking certifications, conducting background investigations, reviewing education and skills of volunteer candidates, and maintaining a personnel file and a training file, did not render rescue squad members "employees").  That City agencies supposedly referred to Plaintiffs as "employees" is not determinative of the employment relationship because it is "antithetical to settled jurisprudence calling for consideration of the totality of the circumstances of each case."  *See Solis v. Laurelbrook Sanitarium & Sch., Inc*., 642 F.3d 518, 524 (6th Cir. 2011).

### 3. Plaintiffs Primarily Benefited From Performing Community Service

A key factor in whether an employment relationship exists is determining who primarily benefited from the relationship.  *Velez v. Sanchez*, 693 F.3d 308, 330 (2d Cir. 2012).

Plaintiffs' allegation that the City benefits from the community service because it avoids "hiring and paying additional employees by utilizing their free labor," *see* Amended Compl. ¶ 13, is wholly conclusory and unsupported by the cited newspaper article, which describes the volunteers as "supplements" to "the already beefed-up summer maintenance crews." *See* Lisa W. Foderaro, "If The Parks Are Strewn With Garbage, It Must Be A Monday Morning," N.Y. Times, Sept. 8, 2013.[2]

Even if the City benefited from Plaintiffs' community service, it certainly cannot be said that it "primarily benefited" from Plaintiffs picking up trash for a combined total of three days, especially since Plaintiffs allege to have reaped a "substantial benefit" in avoiding the time, expense and risk of trial, *see* Amended Compl. ¶ 12. *See Benshoff,* 180 F.3d at 145 (holding that while the city benefited from the services of the volunteer rescue squad members, it was the rescue squads themselves that primarily benefited from volunteer's willingness to contribute their time); *Isaacson v. Penn Cmty. Servs., Inc*., 450 F.2d 1306, 1310 (4th Cir. 1971) (conscientious objector who performed civilian work for a non-profit in lieu of induction into the armed forces was not covered under the FLSA because, among other things, the principal purpose of the relationship was to benefit the conscientious objector).  Moreover, the benefit received by plaintiffs Smith and Paybarah cannot be overstated in that after they completed their community service, the criminal charges against them were dismissed.

Accordingly, the totality of the circumstances cannot support a conclusion that Plaintiffs were "employees" based on any benefit conferred to the City.  *See Blair v. Wills*, 420 F.3d 823, 829 (8th Cir. 2005) (student's required chores at boarding school did not constitute "employment" even though it defrayed the school's costs); *see also Marshall v. Regis Educ.*

---

[2] Plaintiffs' citation to a USA Today article, *see* Amended Compl. ¶ 14 n.3, is irrelevant.  This article focuses on community service "approved by the District Attorney to fulfill court sentences," not community service as a

*Corp.*, 666 F.2d 1324, 1327 (10th Cir. 1981) (holding that student resident advisors who performed tasks that facilitated management of the defendant college's resident halls were not employees under the FLSA despite the economic value that their activities conferred).

### 4.       Plaintiffs Voluntarily Chose To Perform Community Service

Individuals will be considered volunteers so long as they provide services "freely and without pressure or coercion, direct or implied, *from an employer.*"  *See* 29 C.F.R. § 553.101 (c) (emphasis added).  As clearly set forth in N.Y. Crim. Law Pr. § 170.55(6), community service "may only be imposed where the defendant has consented to the amount and conditions of such service."  Here, it is undisputed that Plaintiffs "accepted" the offer of an ACD made by the criminal court – not by the City, *see* Amended Compl. ¶¶ 27, 32, 39 – and there are no allegations that they were "coerced" or "pressured" into doing so by the City.

Plaintiffs claim that, in general, individuals performing community service "do not work freely or without direct or implied pressure or coercion from the City" because the "failure to complete work subject[ed them] to significant negative consequences, potentially including prosecution, mandated court appearances, fines, and incarceration."  Amended Compl. ¶ 9.  There are no allegations, however, that the City plays any role in offering Plaintiffs the ACD or in prosecuting Plaintiffs if they fail to complete their community service.  The City simply provides the means for Plaintiffs to fulfill the condition of their ACD and a "report" of Plaintiffs' attendance.  Any "coercion" or "pressure" felt by Plaintiffs could only be attributed to the criminal court or the prosecutors, not the City.

Under the totality of the circumstances, Plaintiffs were "volunteers" as defined by the FLSA.  Consequently, they cannot state a claim under the FLSA against the City for unpaid wages and the Amended Complaint must be dismissed.

---

condition of an ACD, a distinction relied upon by Plaintiffs, *see* Amended Compl. ¶ 15.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court issue an order granting its motion to dismiss the Amended Complaint in its entirety together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
    June 24, 2014

       **ZACHARY W. CARTER**
       Corporation Counsel of the
        City of New York
       Attorney for the Defendant
       100 Church Street, Room 2-102
       New York, New York 10007
       (212) 356-2444
       kmartin@law.nyc.gov

       By:_____/s/_____
        Kathryn E. Martin
        Senior Counsel

- 11 -