USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 03/04/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AIDAN DOYLE, et al.,

Plaintiffs,

-v-

THE CITY OF NEW YORK, et al.,

Defendants.

14-CV-2831 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

This case presents a question that appears to be of first impression: whether someone who performs community service as a condition of an adjournment in contemplation of dismissal ("ACD") of criminal charges qualifies as an "employee" for purposes of the Fair Labor Standards Act (the "FLSA" or "Act"), 29 U.S.C. § 201 *et seq.* Plaintiffs Aidan Doyle, Michael Smith, and William Paybarah, each of whom performed such service for the City of New York (the "City") in exchange for dismissal of minor criminal charges pending in state court, argue that they did qualify as employees and, thus, were entitled to receive the federal minimum wage for their service. Moving to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the City argues otherwise, contending that Plaintiffs did not qualify as employees or that they fit within a statutory exemption for "volunteers." Although the Court agrees with Plaintiffs that they were not volunteers within the meaning of the FLSA, it ultimately concludes that they were not covered as employees either, and thus grants the City's motion to dismiss.

**BACKGROUND**

The following facts, taken from the Amended Complaint, are assumed to be true for the purposes of this motion. *See, e.g.*, *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

New York State Criminal Procedure Law ("NYCPL") permits a court, prior to a guilty plea or commencement of trial, and with the consent of both parties, to grant an "adjournment in contemplation of dismissal" — or ACD — for actions involving minor criminal offenses. NYCPL § 170.55(1)-(2). The court may impose various conditions on the defendant. Most relevant for purposes of this case, the court may "require the defendant to perform services for a public or not-for-profit corporation, association, institution or agency," so long as the defendant "has consented to the amount and conditions of such service." *Id.* § 170.55(6). If, after six months, the defendant is not arrested again and complies with the court's conditions, including any service requirement, the charges are dismissed and sealed — for all intents and purposes, the same result as if the defendant had been tried and acquitted. *See id.* § 170.55(2), (8). *See generally Smith v. Bank of Am. Corp.*, 865 F. Supp. 2d 298, 302 (E.D.N.Y. 2012).

Plaintiffs in this case faced prosecution for relatively minor offenses between 2012 and 2014. Doyle was charged with jumping a subway turnstile. (Am. Compl. (Docket No. 13) ¶ 25). Smith was charged with speeding and possessing a "gravity knife," in violation of Section 265.00 of the New York Penal Law. (*Id.* ¶ 30). Paybarah was charged with disorderly conduct and resisting arrest after he was stopped for running a red light on a bicycle. (*Id.* ¶¶ 37-38). All three were granted ACDs, pursuant to which they were required to perform community service — namely, collecting garbage and cleaning up parks and bridges around the City. (*Id.* ¶¶ 27-28, 32-33, 39-40). They agreed to the ACDs at least in part because doing so allowed them to avoid

criminal convictions; according to the Amended Complaint, they were not motivated by any civic, charitable, or humanitarian purpose. (*Id.* ¶¶ 9, 26-27, 32, 39).

Although all three Plaintiffs performed at least part of their required community service, they were not paid for doing so. (*Id.* ¶¶ 18, 28, 33, 40). As of the filing of the Amended Complaint, the criminal charges against Doyle and Smith had been dismissed. (*Id.* ¶¶ 29, 36).[1] The Amended Complaint does not indicate the status of the charges against Paybarah, presumably because the six-month adjournment period had not elapsed at the time the Amended Complaint was filed. (*Id.* ¶ 37).

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the allegations in a complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive such a motion, a complaint must, as a general matter, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

[1] In contrast to the other Plaintiffs, Doyle fulfilled only part of his community service requirement. (Am. Compl. ¶ 29). As a result, he was "declared delinquent" and rearrested. (*Id.*). Nevertheless, the underlying charges "were ultimately dismissed." (*Id.*).

## DISCUSSION

### A. The FLSA and Applicable Regulations

The FLSA, enacted in 1938, requires the payment of minimum and overtime wages to anyone qualifying as an "employee" within the meaning of the statute. *See* 29 U.S.C. §§ 203(e), 206(a), 207(a). Quite unhelpfully, the FLSA defines an "employee" as "'any individual employed by an employer' and an 'employer' includes 'any person acting directly or indirectly in the interest of an employer in relation to an employee.'" *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013) (quoting 29 U.S.C. § 203(d), (e)(1)). The Act also defines "employ" as to "suffer or permit to work." 29 U.S.C. § 203(g). These circular definitions aside, it has long been understood that Congress intended for the term "employee," and thus the reach of the Act, to be construed broadly. The Supreme Court, for example, has noted the "striking breadth" of the term. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992). And the Second Circuit has observed that the FLSA provides "the broadest definition of 'employ' that has ever been included in any one act." *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 69 (2d Cir. 2003).

At the same time, "employee" is not a term of unlimited reach. *See Dejesus*, 726 F.3d at 91. In *Walling v. Portland Terminal Company*, for example, the Supreme Court concluded that the FLSA does not extend to persons "who, without promise or expectation of compensation, but solely for . . . personal purpose or pleasure, worked in activities carried on by other persons either for their pleasure or profit." 330 U.S. 148, 152 (1947). And since *Walling*, Congress has codified various exemptions to the statutory definition of "employee," including one for "individuals who volunteer their services to public agencies." *Brown v. NYC Dep't of Educ.*, 755 F.3d 154, 161 (2d Cir. 2014). Pursuant to that "public service volunteer" exception, "[t]he term

'employee' does not include any individual who volunteers to perform services for a public agency" so long as two conditions are met: (1) "the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform services for which the individual volunteered"; and (2) "such services are not the same type of services which the individual is employed to perform for such public agency." 29 U.S.C. § 203(e)(4)(A); *see Brown*, 755 F.3d at 161. Whether a person is a "public service volunteer" within the meaning of the FLSA is "ultimately a question of law." *Brown*, 755 F.3d at 160-61.

The FLSA does not define the term "volunteer" for purposes of the statutory exception. But the Department of Labor (the "DOL") has promulgated a four-part test for determining whether a person qualifies. Specifically, a person performing services for a public agency must:

> (1) have a civic, charitable, or humanitarian purpose,
> (2) have not been promised or expect or receive compensation for the services rendered,
> (3) perform such work freely and without pressure or coercion, direct or implied, from the employer, and
> (4) not be otherwise employed by the same public agency to perform the same type of services as those for which the individual proposes to volunteer.

*Brown*, 755 F.3d at 161-62; *see* 29 C.F.R. § 553.101(a), (c), (d). The DOL's definition "should be applied in a common-sense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided." *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 428 (4th Cir. 2011) (internal quotation marks omitted). Further, as the DOL is tasked with administering the FLSA — and specifically tasked with promulgating regulations to implement the public service volunteer exception — its definition of the term "volunteer" is entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-45 (1984). *See Brown*, 755 F.3d at 161 & n.4.

**B. Discussion**

In moving to dismiss, the City's principal argument is that Plaintiffs were not covered by the FLSA when they performed their community service as a condition of their ACDs because they qualified as public service volunteers within the meaning of the Act and the DOL's regulation. (Mem. Law Supp. Def.'s Mot. To Dismiss Am. Compl. (Docket No. 15) ("Def.'s Mem.") 4-10; Reply Mem. Law Further Supp. Def.'s Mot. To Dismiss Am. Compl. (Docket No. 25) ("Def.'s Reply Mem.") 2-6). Although that argument has some superficial appeal, it cannot be squared with the DOL's requirement that a public service volunteer "have a civic, charitable, or humanitarian" purpose. 29 C.F.R. § 553.101(a). It is true that such a motivation need not be "singular to support the volunteer exception to the FLSA," *Brown*, 755 F.3d at 163-65 & n.6, but "the individual must be motivated by civic, charitable or humanitarian reasons, *at least in part*," *Purdham*, 637 F.3d at 429 (emphasis added). And in this case, the Amended Complaint alleges — and the Court must assume to be true — that Plaintiffs had no "civic, humanitarian, or charitable reasons" at all for performing the work that they did on behalf of the City. (Am. Compl. ¶ 9). Given that allegation, and the need to interpret the FLSA's exemptions narrowly because the statute is remedial, *see, e.g.*, *Brown*, 755 F.3d at 163; *see also Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960), it follows that Plaintiffs did not qualify as "volunteers" for purposes of the FLSA.

Were there any doubt on that score, it would be resolved by the DOL's interpretation of its own regulation. Notably, in a response to comments on the proposed definition of public service volunteer — a response not cited by either Plaintiffs or the City — the agency stated:

> Two commenters suggested that the definition of "volunteer" in § 553.101(a) be revised to include individuals who are required by a court to perform community service for no compensation. While, depending on all the facts and circumstances, such individuals would not be considered "employees" under the

> FLSA, and thus would not be entitled to minimum wage or overtime compensation, they also would not fall within the definition of "volunteer." Therefore, no change has been made in § 553.101(a).

Application of the Fair Labor Standards Act to Employees of State and Local Governments, 52 Fed. Reg. 2012, 2019 (1987). That interpretation is neither "plainly erroneous" nor "inconsistent with the regulation," and thus entitled to deference under *Auer v. Robbins*, 519 U.S. 452, 461 (1997) (internal quotation marks omitted). *See Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 207 (2d Cir. 2009); *see also, e.g.*, *Rupert v. PPG Indus., Inc.*, No. 07-CV-705, 2009 WL 596014, at *41 n.5 (W.D. Pa. Feb. 26, 2009) (discussing the rationale for applying *Auer* deference to an agency's response to comments). It follows that Plaintiffs did not qualify as exempt public service volunteers when they performed their community service.

That is not the end of the matter, however, because the mere fact that Plaintiffs did not fall within a specific exemption does not mean that they qualified as covered "employees" within the meaning of the FLSA. *See, e.g.*, *Vanskike v. Peters*, 974 F.2d 806, 807 n.2 (7th Cir. 1992) (rejecting the argument that if someone does not fall within a specific exemption to FLSA, it follows that he or she comes "within the meaning of the term 'employee[]'"). Indeed, as noted above, while the DOL concluded that people who were court-ordered to perform community service do not qualify as volunteers for purposes of the FLSA, it *also* concluded that, "depending on all the facts and circumstances, such individuals would not be considered 'employees' under the FLSA, and thus would not be entitled to minimum wage or overtime compensation." 52 Fed. Reg. at 2019. That interpretation is not subject to *Auer* deference because it concerns the statute rather than a DOL regulation. *See, e.g., Gonzales v. Oregon*, 546 U.S. 243, 257 (2006); *see also Torres v. Ridgewood Bushwick Senior Citizens Homecare Council Inc.*, No. 08-CV-3678 (CBA), 2009 WL 1086935, at *4 (E.D.N.Y. Apr. 22, 2009) ("*Auer* deference does not apply, however, if

the interpretation is construing the statute itself."). Nor does *Chevron* deference seem appropriate, because the agency was responding to comments on its proposed definition of the term "volunteer," not the broader term "employee." *Cf. Gonzales*, 546 U.S. at 255-56 (stating that *Chevron* deference is appropriate only where "Congress delegated authority to the agency generally to make rules carrying the force of law" and the agency interpretation at issue "was promulgated in the exercise of *that* authority" (emphasis added) (internal quotation marks omitted)). Nevertheless, the DOL's interpretation is entitled to some weight, if only "by reason of its common-sense soundness, and the 'body of experience and informed judgment' that the Department of Labor brings to bear on questions of wage and labor practices." *Clarke v. City of New York*, No. 06-CV-11397 (GEL), 2008 WL 3398474, at *5 n.3 (S.D.N.Y. June 16, 2008) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). *See generally United States v. Mead Corp.*, 533 U.S. 218, 234 (2001) (noting that to conclude that an agency's interpretation "do[es] not fall within *Chevron* is not, however, to place [it] outside the pale of any deference whatever").

In any event, whether or not the DOL's interpretation is entitled to deference, the Court agrees that Plaintiffs, in performing court-ordered community service as a condition of their ACDs, did not qualify as "employees" within the meaning of the FLSA.[2] Significantly, the

---

[2] As noted, the City's principal argument is that Plaintiffs were exempt from coverage under the FLSA as "volunteers." (Def.'s Mem. 4-10). Although the City does not explicitly make the alternative argument that Plaintiffs were not covered as "employees," the Court declines to treat the argument as forfeited. The argument is fairly encompassed by the City's arguments regarding the scope of "employee" and "volunteer," as reflected by the fact that the City relies on several of the cases relevant to the analysis that are discussed below. (*See, e.g.*, Def.'s Mem. 9 (citing *Isaacson v. Penn Cmty. Servs., Inc.*, 450 F.2d 1306 (4th Cir. 1971); Def.'s Reply Mem. 9 (citing *Danneskjold v. Hausrath*, 82 F.3d 37, 42 (2d Cir. 1996)). Additionally, Plaintiffs' memorandum of law in opposition to the City's motion goes well beyond the applicability of the public service volunteer exception, and explicitly argues that Plaintiffs qualify as "employees" within the meaning of the FLSA. Given that the issue is one of law, and

Second Circuit "has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of circumstances." *Barfield v. NYC Health & Hosps. Corp.*, 537 F.3d 132, 141-42 (2d Cir. 2008). More specifically, determination of whether an employer-employee relationship exists for purposes of the FLSA "depends on its economic reality." *Velez v. Sanchez*, 693 F.3d 308, 326 (2d Cir. 2012) (internal quotation marks omitted). That test "encompasses the totality of circumstances, no one of which is exclusive." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). And "[s]ince economic reality is determined based upon all the circumstances, any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition." *Id.* (emphasis omitted).

In applying the "economic realities" test, the Second Circuit has identified specific factors to be considered in "particular situations." *Brown*, 755 F.3d at 167; *see, e.g.*, *Velez*, 693 F.3d at 329-31 (2d Cir. 2012) (identifying seven factors to be used in determining whether an individual is a domestic service worker or a household member); *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988) (identifying five factors to be used in distinguishing employees from independent contractors); *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984) (identifying four factors to be used to determine employer status). In doing so, however, the Court of Appeals has made clear that there is no "single 'economic realities' test consisting of uniform factors" to be applied in every case; instead, the economic realities must be "assessed by reference to the particular situation with some factors more important than others depending on the FLSA question at issue and the context in which it arises." *Brown*, 755 F.3d at 167; *see id.* at 168 (reaffirming that "an economic realities test is not 'confined to a narrow

---

that Plaintiffs have been heard on it, the Court sees no reason to refrain from deciding it. That said, as discussed below, it does counsel in favor of granting Plaintiffs leave to amend.

legalistic definition' but, rather, looks to all circumstances relevant to the matter in issue" (quoting *Velez*, 693 F.3d at 330)).  In fact, the Second Circuit has found that, in certain contexts, application of a multi-factor test can cause a court to miss the forest for the trees and that, in those cases, the economic reality test must be applied at "a higher level of generality," with attention to whether the case involves the kind of employment relationship Congress had in mind when it enacted the FLSA.  *Danneskjold*, 82 F.3d at 42-43 (declining to deem the plaintiff an employee where he "was not an employee in any conventional sense"); *see also Vanskike*, 974 F.2d at 809-11 (holding that the ordinary economic reality test did not make sense where the relationship did "not stem from any remunerative relationship or bargained-for exchange of labor for consideration").  This is such a case.

Indeed, the "best guide" of whether the term "employee" encompasses those performing community service as a condition of an ACD is not a multi-factor test or the unhelpful statutory definition of the term "employee," but rather "our common linguistic intuitions, and those intuitions are at least strained by the classification of [such persons] as 'employees'" of the City.  *Vanskike*, 974 F.2d at 807.  Put simply, people who perform community service as a condition of an ACD do not do so "for the purpose of enabling them to earn a living," *Bennett v. Frank*, 395 F.3d 409, 410 (7th Cir. 2005), or indeed to receive financial compensation of any kind.  (*But cf.* Am. Compl. ¶ 12 (claiming that the "compensation" that Plaintiffs receive for an ACD is a report confirming that they completed their assignment)).  Plaintiffs, for example, do not suggest that monetary compensation or the hope thereof played *any* role in their decision to accept ACDs or in the courts' decisions to grant them.  Instead, the obvious purpose of New York's ACD program is to enable the parties to resolve cases involving minor offenses in a way that provides more substantial consequences than outright dismissal of the charges, but allows defendants to

avoid the risks and anxieties associated with further prosecution and the "criminal stigma" that attaches to convictions. *See Lancaster v. Kindor*, 471 N.Y.S.2d 573, 579 (App. Div., 1st Dep't 1984) ("The purpose of the statutory ACD procedure was to provide a shield against the criminal stigma that would attach to a defendant accepting such an adjournment; it was not intended to present such a defendant with a sword for recovery of monetary damages as a result of the prosecution."), *aff'd*, 65 N.Y.2d 804 (1985). In fact, in transmitting to the Governor the legislation that amended the NYCPL to allow courts to impose community service as a condition of an ACD, the Assembly Codes Committee explained that its justification was that "'Defendants who do not have money to make restitution (sic) should, when practical, pay for their offense through community service.'" *Triebwasser v. State of N.Y.*, 457 N.Y.S.2d 407, 408-09 (N.Y. Ct. Cl. 1982) (emphasis omitted) (quoting Codes Comm. Bill 10884). Those goals are not "compatible with federal regulation of their wages and hours." *Bennett*, 395 F.3d at 410.

Additionally, interpreting the term "employee" to include those in Plaintiffs' position would not be consistent with Congress's purposes in enacting the FLSA. *See Vanskike*, 974 F.2d at 807 (noting that "words have meaning in context, and it is rare that statutory terms may be responsibly applied without any consideration whatsoever of the statutory context and purposes"). As the Supreme Court has observed, "the primary purpose of Congress was not to regulate interstate commerce as such. It was to eliminate, as rapidly as practicable, substandard labor conditions throughout the nation. It sought to raise living standards without substantially curtailing employment or earning power." *Powell v. U.S. Cartridge Co.*, 339 U.S. 497, 509-10 (1950). Extending the FLSA to cover those whom a court orders to perform community service in lieu of criminal prosecution would do little to advance that purpose. At the same time, it would threaten to undermine the efficacy of programs like New York's ACD program, as judges

and prosecutors might be less inclined to agree to ACDs if doing so would require City agencies to pay for labor that they might not otherwise have even wanted.  The Court assumes that Congress would not have intended such a result.  *Cf. Brown*, 755 F.3d at 164 (noting that courts should not "impos[e] . . . judicial limits not intended by either Congress or the implementing agency").  If anything, the Court assumes that "[t]he reason the FLSA contains no express exception for" people in Plaintiffs' position "is probably that the idea was too outlandish to occur to anyone when the legislation was under consideration by Congress."  *Bennett*, 395 F.3d at 410.

In arguing otherwise, Plaintiffs note that City agencies refer to people in their positions as "employees."  (Pls.' Mem. Law Opp'n Def.'s Mot. To Dismiss (Docket No. 19) ("Pls.' Mem.") 18; Am. Compl. ¶ 8).  But "[t]he label an employer . . . furnishes an employee for internal purposes is not determinative of the employee's status under the FLSA."  *Wright v. Aargo Sec. Servs., Inc.*, No. 99-CV-9115 (CSH), 2001 WL 91705, at *7 (S.D.N.Y. Feb. 2, 2001); *see also, e.g.*, *Barfield*, 537 F.3d at 141, 143 (noting that in determining whether someone is an "employee" for the purposes of the FLSA, courts must rely on a "functional" definition "'rather than technical[ities]'" (quoting *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)).  Plaintiffs also argue by analogy to cases involving participants in New York's "workfare" program, the Work Experience Program (the "WEP"), whom the Second Circuit has deemed employees for the purposes of Title VII of the Civil Rights Act of 1964, *see United States v. City of New York*, 359 F.3d 83 (2d Cir. 2004), and whom district courts have deemed employees for purposes of the FLSA, *see, e.g.*, *Elwell v. Weiss*, No. 03-CV-6121 (JWF), 2007 WL 2994308 (W.D.N.Y. Sept. 29, 2006).  (Pls.' Mem. 9-14).  Those cases, however, are distinguishable on at least two grounds.  First, the plaintiffs in those cases performed their work in order to receive wages and other benefits and, in fact, received cash and food stamps

equivalent in value to the minimum wage for the number of hours they worked — "an all too typical way of calculating compensation for work." *City of New York*, 359 F.3d at 96.  Second, the DOL took the position that participants in workfare programs like the WEP were covered by the FLSA, and a congressional attempt "to 'override the DOL's interpretation' and exclude 'workfare' recipients from the protections of the FLSA" was unsuccessful.  *Elwell*, 2007 WL 2994308, at *5 (quoting *City of New York*, 359 F.3d at 100); *see also City of New York*, 359 F.3d at 100 ("The failure of Congress to act when it had knowledge of DOL's interpretation suggests that DOL's interpretation is correct.").  By contrast, as noted, the DOL has opined that people who are court-ordered to perform community service, such as Plaintiffs, should *not* be treated as employees under the FLSA, and Congress has done nothing to countermand that view.

Although not binding, *Isaacson v. Penn Community Services, Inc.*, 450 F.2d 1306, is more analogous to this case than the workfare cases are.  In *Isaacson*, the Fourth Circuit held that a conscientious objector performing "work of national importance" in lieu of military service was not an employee for the purposes of the FLSA.  *Id*. at 1310.  The Court determined that Plaintiff's national service was not the sort of employment protected by FLSA largely because it was performed out of a legal obligation to serve the public good rather than a desire for compensation.  *See id.* at 1309-10; *cf. Bennett*, 395 F.3d at 410 (declining to deem prisoners "employees" in part because they do not work "for the purpose of enabling them to earn a living").  The Court also stressed the fact that "the principal benefit of the relationship was to plaintiff" as the work allowed him to satisfy "his statutory obligation to render service under the Selective Service Act in lieu of volunteering for or induction into the military."  450 F.3d at 1310.  Here, as there, because the community service performed as part of an ACD must be for "a public or not-for-profit corporation, association, institution or agency," NYCPL § 170.55(6),

any benefit to the City is also, "[i]n the broad sense . . . benefit to the public at large — a benefit of a different nature than that of a for-profit enterprise," *Isaacson*, 450 F.3d at 1309-10. And the "principal benefit of the relationship" was also to Plaintiffs, as their service enabled them to avoid further prosecution and the risk of conviction. As Plaintiffs themselves observe, that benefit is so significant that "only a hero could refuse" an offer of an ACD. (Pls.' Mem. 2).[3]

Finally, the Court's conclusion that Plaintiffs were not employees finds further support in *Danneskjold v. Hausrath*, 82 F.3d at 37, and other cases addressing the applicability of the FLSA to inmate labor. *See, e.g.*, *Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006) (collecting cases in which federal courts of appeals have declined to extend FLSA protections to inmates). *Danneskjold* involved an inmate at Attica Correctional Facility who argued that he qualified as an "employee" under the FLSA when he worked as a "clerk-tutor" in a prison educational program. *See* 82 F.3d at 39-40. Applying the economic reality test "at a higher level of generality," the Second Circuit held that he did not. *Id.* at 42. "The relationship" between prison and prisoner, the Court reasoned, "is not one of employment; prisoners are taken out of the national economy; prison work is often designed to train and rehabilitate; prisoners' living standards are determined by what the prison provides; and most such labor does not compete with private employers." *Id.*; *see also Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir. 1993) ("Inmates perform work for [the prison] not to turn profits for their supposed employer, but rather as a means of rehabilitation and job training."). The Court acknowledged that a different result might apply where a prisoner did work for the benefit of a private enterprise or

---

[3] *Isaacson* also noted that the plaintiff's position was created specifically for him, so there was little danger that he was displacing labor to which the FLSA would apply. *See id.* at 1310-11. By contrast, Plaintiffs allege that is not the case here, as their labor allows the City to avoid hiring additional workers. (Am. Compl. ¶ 15). To that extent, *Isaacson* is arguably distinguishable, but it is nevertheless instructive. *See also infra* note 4.

was employed to produce goods or services that were sold in commerce. *See* 82 F.3d at 42, 44. But, the Court concluded, the "performance of labor that serves institutional needs of the prison is not in economic reality an employment relationship" and, despite the absence of an explicit statutory exemption, Congress most certainly did not intend the FLSA to apply. *Id.* at 42-44.

To be sure, there are differences between inmates and people, such as Plaintiffs, who receive an ACD. Most importantly, someone who receives an ACD has not been convicted of a crime. In addition, a person who receives an ACD is not taken out of the national labor pool through incarceration, but can remain an active participant in the national and local economies. (*See* Am. Compl. ¶ 13 (alleging that individuals who receive an ACD remain part of the national economy)). But Plaintiffs do not suggest that being required to perform community service as a condition of their ACDs interfered with their ability to participate in the economy. (*See id.* (alleging that "the City allows the individuals to perform their work for the City on weekends or other times that do not interfere with their other work")). And while they do argue that allowing the City to exploit their free labor undermines the FLSA wage scale because the City would otherwise have to hire people to do their work (Pls.' Mem. 13-14), any such effect is minimal because those in Plaintiffs' position are not "employed to produce goods or services that are sold in commerce." *Danneskjold*, 82 F.3d at 44; *see also, e.g.*, *Kavazanjian v. Naples*, No. 06-CV-3390 (JG), 2006 WL 2795220, at *1-2 (E.D.N.Y. September 26, 2006) (applying *Danneskjold* to hold that the FLSA does not apply to prisoners assigned to work for the state Department of Motor Vehicles even though "non-prisoner DMV employees may do similar work," reasoning that because the "DMV is a state agency, and does not compete with any other company in order to provide the services rendered by the plaintiffs, . . . it is not possible for the plaintiffs to

demonstrate that their labor was the sort that would undermine the FLSA wage scale").[4]  If Plaintiffs had been required to work for private, for-profit enterprises, they might well have a strong case for coverage under the FLSA.  *See Danneskjold*, 82 F.3d at 44; *see also Watson v. Graves*, 909 F.2d 1549, 1555-56 (5th Cir. 1990).  But the NYCPL, by its terms, allows for community service only at "a public or not-for-profit corporation, association, institution or agency."  NYCPL § 170.55(6).

## CONCLUSION

In short, for the foregoing reasons, the Court concludes — as a matter of law — that Plaintiffs were not "employees" within the meaning of the FLSA when they performed the community service to which they consented pursuant to their ACDs.  Accordingly, Defendant's motion to dismiss is GRANTED.  The Court is skeptical that Plaintiffs can plead any facts that would change the result.  Nevertheless, because the Court's reasoning goes somewhat beyond the arguments that the City presented in its motion, the Court concludes that Plaintiffs should be given an opportunity to amend their Complaint in light of this Opinion and Order.

---

[4]  It is true that, for every critical job that a prison or other state agency fills via free labor, it can hire one fewer wage-earning employee, which reduces the aggregate demand for labor and arguably creates a downward pressure on wages.  Nevertheless, this was the case in *Danneskjold* and the many other cases in which courts have declined to extend the FLSA to inmate labor.  *See Danneskjold*, 82 F.3d at 42-44; *see also, e.g.*, *Vanskike*, 974 F.2d at 811 (declining to extend the FLSA to inmate labor despite acknowledging that "[f]or every prisoner who is assigned to sweep a floor or wash dishes for little or no pay, there is presumably someone in the outside world who could be *hired* to do the job-someone who would have to be paid at least $4.25 an hour" because such an "approach to the FLSA[] . . . cuts a broad swath: carried to its logical conclusion, prisoners must be paid minimum wage for anything they do in prison that can be considered 'work'").  In light of the Second Circuit's decision in *Danneskjold*, the Court concludes that this substitution effect, by itself, is not sufficient to invoke the FLSA, at least where, as here, the public agency or organization does not directly compete with private enterprise.

Accordingly, Plaintiffs are hereby given leave to file a second amended complaint within **thirty days** of the date of this Opinion and Order; Plaintiffs will not be given any further opportunity to amend to address the defects discussed in this Opinion and Order.  If Plaintiffs do amend, the City shall have **three weeks** in which to respond to the new complaint.  If Plaintiffs do not amend, the case will be dismissed without further notice to the parties.

The Clerk of Court is directed to terminate Docket No. 14.

SO ORDERED.

Date: March 4, 2015
New York, New York

JESSE M. FURMAN
United States District Judge